UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| KRISTIN LOUPE | CIVIL ACTION |
| VERSUS | |
| ROBIN O'BANNON, ET AL. | NO.: 14-00573-BAJ-RLB |

RULING AND ORDER

Before the Court are Defendants' **Motion to Strike Pursuant to Louisiana Code of Civil Procedure Article 971 and Motion to Dismiss Pursuant to Rule 12(b)(6) on behalf of Robin O'Bannon and Ricky Babin (Doc. 7)** and their renewed motion asserting the same arguments filed in light of Plaintiff's Amended Complaint **(Doc. 21)**,[1] seeking an order from this Court dismissing Kristin Loupe's claims against them, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and Louisiana Code of Civil Procedure Article 971. Loupe opposes the motions. (Docs. 8, 9). O'Bannon and Babin filed a reply memorandum in opposition. (Doc. 18).

I.   Background

Kristin Loupe ("Plaintiff") commenced the instant action on September 11, 2014, against Assistant District Attorney Robin O'Bannon ("ADA O'Bannon"), District Attorney Ricky Babin ("DA Babin"), Sheriff Jeffrey Wiley, Sheriff's Deputy

---

[1] After the initial Motion to Strike and Motion to Dismiss were filed, Plaintiff filed an Amended Complaint (Doc. 20) to replace "Sheriff Deputy Jane Doe" with "Sheriff Deputy Jennifer Kernan." All claims are otherwise identical to those raised in the original Complaint (Doc. 1). Defendants then renewed their motion with respect to the Amended Complaint, reasserting the same arguments.

1

James Wolfe, and Sheriff's Deputy Jennifer Kernan, seeking damages for injuries allegedly associated with prosecutorial and law enforcement abuse that led to a deprivation of Plaintiff's constitutionally protected rights.[2] (Docs. 1, 20).

Plaintiff's Amended Complaint alleges that Plaintiff was called to testify as a witness on January 24, 2014, at a bond hearing in the Honorable Alvin Turner's ("Judge Turner") courtroom in Ascension Parish. (Doc. 20 at ¶ 2). The hearing was held to determine the appropriate bond for David Adams, Jr. ("Adams"), Plaintiff's boyfriend, following a report of a domestic dispute. (*Id.*). While testifying, Plaintiff was unable to recall the details of the domestic event, but acknowledged that Adams hurt her arm during the incident. (*Id.* at ¶ 4).

Plaintiff next alleges that ADA O'Bannon became angry as a result of Plaintiff's refusal to testify that Adams hit her in the face, and requested that Judge Turner have Plaintiff arrested. (*Id.* at ¶¶ 5-6). Plaintiff asserts that Judge Turner refused ADA O'Bannon's request. (*Id.* at ¶ 6). Thereafter, Sheriff's Deputy Blake Prejean was called to testify, and stated under oath that Plaintiff did not report that she was hit in the face. (*Id.* at ¶ 7). Nonetheless, ADA O'Bannon then allegedly ordered Plaintiff to be arrested for filing a false police report. (*Id.* at ¶ 8).

Plaintiff asserts that ADA O'Bannon acted with deliberate malice to exact revenge when she could not elicit favorable testimony. (*Id.* at ¶ 8). Plaintiff also contends that DA Babin was present in the courtroom and thus, observed the arrest, but made no effort to stop it. (*Id.* at ¶ 9).

---

[2] Only Defendants ADA O'Bannon and DA Babin presented defenses to the Court in the instant motions. (*See* Docs. 7, 21). Accordingly, any reference to "Defendants" in the instant Ruling and Order shall refer only to ADA O'Bannon and DA Babin.

Following Plaintiff's arrest, she was transported to the Ascension Parish jail in Donaldsonville, Louisiana. (*Id.* at ¶ 13). Plaintiff alleges that she was escorted to a shower cell, where there was no heat and there were puddles of water on the floor. (*Id.*). Plaintiff further alleges that these events occurred on a day when south Louisiana was experiencing severely cold weather and icy conditions. (*Id.* at ¶ 10). Plaintiff asserts that she was strip-searched and left to stand in the shower cell for over an hour with no shoes and minimal clothing. (*Id.* at ¶¶ 14–15). As a result of these conditions and extreme temperatures, Plaintiff allegedly suffered from paresthesia[3] and the beginning stages of frost bite. (*Id.* at ¶ 19).

Plaintiff was released from the Ascension Parish jail on her own recognizance later the same evening. (*Id.* at ¶ 17). The Ascension Parish District Attorney's Office continued the prosecution of the Plaintiff for criminal mischief and filing a false police report. (*Id.* at ¶¶ 17–20). Ultimately, Plaintiff was found not guilty of the charges. (*Id.* at ¶ 21).

## II. Motion to Dismiss

### A. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

[3] According to the National Institute of Neurological Disorders and Stroke, paresthesia "refers to a burning or prickling sensation that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. The sensation, which happens without warning, is usually painless and described as tingling or numbness, skin crawling, or itching." *See NINDS Paresthesia Information Page*, National Institute of Neurological Disorders and Stroke (last updated Feb. 14, 2014), http://www.ninds.nih.gov/disorders/paresthesia/paresthesia.htm.

8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555.

Further, the United States Supreme Court has noted that Rule 12(b)(6) requires dismissal whenever a claim is based on an invalid legal theory:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory, or on a close but ultimately unavailing one.

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (internal citations omitted). When a complaint fails to satisfy these principles, "this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

4

### B. Claims against ADA O'Bannon and DA Babin in their Individual Capacities

The generic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure govern suits against defendants sued in their official capacity. *Anderson v. Pasadena Indep. Sch. Dist.,* 184 F.3d 439, 443 (5th Cir. 1999). Thus, with respect to official capacity claims, Plaintiff need only provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff suing governmental officials in their individual capacities, however, must allege specific conduct giving rise to a constitutional violation. *Anderson,* 184 F.3d at 443. This standard requires "more than conclusory assertions"; a plaintiff must allege specific facts giving rise to a constitutional violation. *Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir. 1996).

Here, Plaintiff alleges that ADA O'Bannon and DA Babin are liable under 42 U.S.C. § 1983 in their individual capacities for violations of her rights under the First and Fourth Amendments to the United States Constitution. (Doc. 20 at ¶¶ 22, 31). Plaintiff also alleges that DA Babin is liable in his official capacity. (*Id.*). Each will be considered in turn.

#### i. Claim against ADA O'Bannon in his Individual Capacity

As a prosecutor, ADA O'Bannon is entitled to absolute prosecutorial immunity for conduct that is "intimately associated with the judicial phase of the criminal process[.]" *Brooks v. George Cnty*, 84 F.3d 157, 168 (5th Cir. 1996) (quoting

5

*Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)). This immunity extends to situations where the prosecutor is acting within her role as an "advocate for the State." *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993). Indeed, the protection is so great that it "shelters prosecutors even when they act 'maliciously, wantonly or negligently.'" *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987) (quoting *Morrison v. City of Baton Rouge,* 761 F.2d 242, 248 (5th Cir. 1985)). *See also, e.g.*, *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (protection extends even to actions taken "with an improper state of mind or improper motive"). Moreover, conduct falling within this category is "not limited 'only to the act of initiation itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate for the State.'" *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (quoting *Buckley*, 509 U.S. at 272).

Under this authority, the claims against ADA O'Bannon in her personal capacity must be dismissed. As reprehensible as the allegations of maliciousness may be, if true, ADA O'Bannon was acting within the broad purview of being an advocate for Ascension Parish in ordering the arrest of Plaintiff for filing a false police report, and subsequently pursuing the charges. *See Buckley*, 509 U.S. at 272 (finding that prosecutorial immunity extends to "actions preliminary to the initiation of a prosecution"); *Brummett v. Camble,* 946 F.2d 1178, 1181-82 (5th Cir. 1991) (holding prosecutors absolutely immune from a § 1983 action predicated on malicious prosecution for their conduct in initiating a prosecution); *Oliver v. Collins*,

904 F.2d 278, 281 (5th Cir. 1990) (holding that the decision to file or not file criminal charges is protected by prosecutorial immunity).

Because DA O'Bannon enjoys absolute prosecutorial immunity from civil liability in her individual capacity, Defendants' Motion to Dismiss this claim is granted.

### ii. Claim against DA Babin in his Individual Capacity

Though not entirely clear from the Amended Complaint, Plaintiff's claims against DA Babin in his personal capacity for alleged violations of her First and Fourth Amendment rights appear to be failure to supervise claims.[4]

Notably, supervisory officials are generally not liable for the actions of subordinates on any theory of vicarious liability in § 1983 actions. *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir. 1987). "However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 304. Plaintiff has not alleged that DA Babin was personally involved in Plaintiff's constitutional deprivation,[5] thus to succeed on such a claim, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the

---

[4] Like ADA O'Bannon, DA Babin is entitled to absolute prosecutorial immunity for his advocacy functions, but enjoys only qualified immunity with respect to his administrative functions. *Buckley*, 509 U.S. at 273 (citing *Imbler*, 424 U.S. at 4321 n.33).

[5] Indeed, it was DA Babin's alleged failure to personally involve himself in Plaintiff's arrest to which Plaintiff now takes issue. (Doc. 20 at ¶¶ 26, 35).

failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoesttsy,* 158 F.3d 908, 911–12 (5th Cir. 1998). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 410 (1997) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)). To demonstrate deliberate indifference, a plaintiff must show: "(1) a pattern of similar violations; (2) that the inadequacy of the training was obvious; and (3) that the inadequacy of the training was obviously likely to result in a constitutional violation." *Burge v. Parish of St. Tammany,* 187 F.3d 452, 466 (5th Cir. 1999). Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference. *Snyder v. Trepagnier,* 142 F.3d 791, 798–99 (5th Cir. 1998); *Thompkins,* 828 F.2d at 304–305. *See also Snyder,* 142 F.3d at 798 (generally requiring that a plaintiff demonstrate at least a pattern of similar violations).

After reviewing the pleadings, the Court finds that Plaintiff's Amended Complaint fails to satisfy any of the above requirements, and thus, fails to establish a plausible claim against DA Babin in his individual capacity for failure to supervise. Plaintiff does not sufficiently allege a pattern of similar violations or even that this sort of violation had previously occurred. Instead, Plaintiff merely assumes that DA Babin's failure to intervene after observing his subordinate allegedly "violate[] the Plaintiff's Constitutional rights," denotes the existence of "an

official policy or custom [by the Ascension Parish District Attorney's office] of condoning or encouraging its employees to retaliate against citizens who testify truthfully and exercise their 1st Amendment rights when such testimony is not advantageous to the prosecution." (Doc. 20 at ¶¶ 27, 36). Plaintiff also fails to make the requisite connection between the alleged failure to supervise and the incident on January 24, 2014. On these facts, the existence of one isolated incident is not enough. As the United States Court of Appeals for the Fifth Circuit has stated, "There has to be more underlying a complaint than a hope that events happened in a certain way. Instead, in the 'short and plain' claim against a public official, 'a plaintiff must at least chart a factual path to the defeat of the defendant's immunity, free of conclusion.'" *Floyd v. City of Kenner*, 351 F. App'x 890, 898 (quoting *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995)).

Having only relied upon conclusory allegations and inferences, Plaintiff's claims against DA Babin in his individual must be dismissed for failure to state a claim for relief. *See Iqbal*, 556 U.S. at 678–79.

### C. Claim against DA Babin in his Official Capacity

Plaintiff also asserts claims against DA Babin in his official capacity for alleged violations of her First and Fourth Amendment rights. (Doc. 20 at ¶¶ 22, 31). A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent. *Burge v,* 187 F.3d at 466 (citing *Monell v. New York City Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 691 n. 55 (1978)). Accordingly, the claims against DA Babin in

his official capacity are, in effect, claims against the Ascension Parish District Attorney's Office as an entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Because an official capacity suit does not involve personal liability of an individual defendant, the only immunities that attach are those "forms of sovereign immunity that the entity, qua entity, may possess . . . ." *Id.* at 167. As such, DA Babin may not invoke absolute prosecutorial immunity to defend against Plaintiff's official capacity claims. *See Burge*, 187 F.3d at 468. Moreover, district attorney offices in Louisiana are local government entities and thus not entitled to Eleventh Amendment sovereign immunity. *See Kentucky*, 473 U.S. at 167; *Burge*, 187 F.3d at 466; *Hudson v. City of New Orleans*, 174 F.3d 677, 691 (5th Cir. 1999). *See also Spikes v. Phelps*, 131 F. App'x 47, 49 (5th Cir. 2005) ("based on Louisiana law, . . . a parish district attorney is not entitled to Eleventh Amendment immunity").

Despite the lack of immunity, the liability of entities such as district attorney offices is limited. An entity may be held liable under § 1983 for the constitutional torts of its agents only when an official policy of the entity itself caused the deprivation of the plaintiff's rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477-79 (1986). To succeed on such a claim, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010).

The Fifth Circuit defines an official policy as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc). Although "a single decision may create [local entity] liability *if* that decision were made by a final policymaker responsible for that activity," *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (internal quotations and citations omitted) (emphasis in original), absent an official policy, actions of officers or employees of local government entities do not render the entity liable under § 1983.[6] *Id.*

Here, Plaintiff alleges that DA Babin sets the official policy or custom of the Ascension Parish District Attorney's Office, and therefore, should be liable in his official capacity. (Doc. 20 at ¶¶ 27, 36). More specifically, Plaintiff asserts that because DA Babin "failed to intervene" on one specific occasion when ADA O'Bannon was allegedly violating Plaintiff's rights, "the Ascension Parish District Attorney's Office has an official policy or custom of condoning or encouraging its

---

[6] Indeed, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, a municipality cannot be held liable under § 1983 for the tortious behavior of its employees under a theory of *respondeat superior*. *Id.*

11

employees to retaliate against citizens who testify truthfully and exercise their 1st Amendment rights when such testimony is not advantageous to the prosecution." (*Id.* at ¶ 27). Even without a heightened pleading requirement, the instant facts are not sufficient.

After *Twombly* and *Iqbal,* a plaintiff cannot survive dismissal on a *Monell* claim simply by pointing to a violation of his rights and alleging a policy around it. *See, e.g., Whitley v. Hanna,* 726 F.3d 631, 649 (5th Cir. 2013) ("The proposed amended complaint makes no specific factual allegations of the county's policies and simply adds the words 'policies, practices, and/or customs' to Whitley's perceived wrongs. Such allegations are insufficient to survive dismissal."). Like the proposed complaint in *Whitley,* Plaintiff's Amended Complaint makes no specific allegation regarding the existence of a policy or a widespread practice, and simply infers the existence based "upon information and belief" and her perceived wrongs. (Doc. 20 at ¶¶ 27, 35). These types of conclusory allegations run afoul of *Tombly* and *Iqbal*, and thus, are insufficient to survive dismissal. *See, e.g., Whitley* 726 F.3d at 649; *Spiller v. City of Tex. City, Police Dep't,* 130 F.3d 162, 167 (5th Cir. 1997) (conclusory description of policy or custom insufficient). Moreover, although "a single decision by a policy maker may, under certain circumstances, constitute a policy for which [a parish] may be liable," *Brown v. Bryan County,* 219 F.3d 450, 462 (5th Cir. 2000), the single incident exception "is a narrow one, and one that [the Fifth Circuit has] been reluctant to expand." *Burge*, 336 F.3d at 373. Plaintiff's

conclusory allegations failed to provide the requisite specificity to qualify for the exception.

Accordingly, Defendants' Motion to Dismiss claims against DA Babin in his official capacity is granted.

### D. Louisiana State Law Claims against ADA O'Bannon and DA Babin

In addition to claims under § 1983, Plaintiff asserts claims against ADA O'Bannon and DA Babin under Louisiana law for defamation,[7] false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress. Louisiana has adopted the same standard of absolute prosecutorial immunity for state claims that are supplied by *Imbler* for federal claims. *See Spikes v. Phelps*, 131 F. App'x at 49; *Knapper v. Connick*, 96-0434, p. 11 (La. 10/15/96), 681 So. 2d 944 (holding that "a prosecutor acting within the scope of his prosecutorial duties as an advocate for the state is entitled to absolute immunity from suit for malicious prosecution"); *Sinclair v. State ex rel. Dep't of Pub. Safety & Corr.*, 1999-2290 (La. App. 1 Cir. 11/3/00), 769 So. 2d 1270; *Connor v. Reeves*, 26,419 (La. App. 2 Cir. 1/25/95), 649 So.2d 803. Indeed, in *Knapper*, the Louisiana Supreme Court explained why district attorneys are afforded such broad immunity:

> Chief among the reasons most often cited for granting absolute prosecutorial immunity are concern that constant fear of later civil suits for damages may chill the vigorous prosecution of those charged with violating state statutes, that such fears may deter competent people from seeking office; and that defense of claims for malicious prosecution may drain valuable time and effort.
> . . . .

---

[7] The claim for defamation is discussed in the context of Defendants' Special Motion to Strike. *See infra* Part III.

> To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.

*Knapper v. Connick*, 681 So. 2d 944, 947-48 (quoting *Imbler*, 424 U.S. at 427-28).

At all times material to the instant case, ADA O'Bannon was acting as an advocate in her prosecutorial capacity, and in Louisiana, prosecuting attorneys are constitutional officers who serve in the judicial branch of government. *Diaz v. Allstate Insurance Co.*, 433 So.2d 699 (La. 1983). As such, ADA O'Bannon also enjoys absolutely immunity for Plaintiff's state law claims of false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress. Because ADA O'Bannon enjoys absolutely immunity, there is no basis on which to hold DA Babin vicariously liable for his employees action. *See* La. C.C.P. art. 2320. *See also Moreau v. Landry*, 205 So.2d 671 (La. App. 1 Cir. 1974) (listing "tortious acts of the employee" as an essential element of *respondeat superior*).

Accordingly, Defendants' Motion to Dismiss Plaintiff's state law claims against ADA O'Bannon and DA Babin is granted.

### III. Special Motion to Strike

In conjunction with their Motion to Dismiss, Defendants filed a Special Motion to Strike under Article 971 of the Louisiana Code of Civil Procedure, La. C.C.P. Art. 971. Article 971 is Louisiana's anti-SLAPP statute (Strategic Lawsuit Against Public Participation), which was enacted to protect the constitutional right

of free speech and to encourage public participation. *Henry v. Lake Charles American Press, L.L.C.*, 556 F.3d 164, 167-69 (5th Cir. 2009) (noting the efforts of state legislatures to strike a "balance between interests in individual reputation and freedom of speech"). It states, in pertinent part:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

La. C.C.P. art. 971. Further, Article 971 is intended to be broadly construed, and serve "as a procedural device to be used early in legal proceedings to screen meritless claims pursued to chill one's constitutional rights under the First Amendment of the United States Constitution to freedom of speech and press." *Henry,* 566 F.3d at 169 (*Lee v. Pennington,* 2002-0381 (La. App. 4 Cir. 10/16/02), 830 So. 2d 1037, 1041).

In evaluating a motion to strike pursuant to Article 971, courts employ a burden-shifting mechanism. First, the defendant must establish a prima facie showing that Article 971 covers the activity underlying the suit, specifically that "the matter arises from an act in furtherance of his or her right of free speech or the right of petition and in relation to a public issue"; if the defendant makes this showing, then the burden shifts to the plaintiff to "demonstrate a probability of success on his or her own claim." *See Henry*, 566 F.3d at 181 (quoting *Darden v. Smith*, 2003-1144 (La. App. 3 Cir. 6/30/04), 879 So. 2d 390, 396, *writ denied,* 2004-1955 (La. 11/15/04), 887 So. 2d 480). The purpose of the law, as stated by the

Louisiana legislature, is "to encourage continued participation in matters of public significance." *Id.* at 169 (quoting *Thomas v. City of Monroe*, 36,526 (La. App. 2 Cir. 12/18/02), 833 So. 2d 1282, 1284).

Here, Plaintiff contends that ADA O'Bannon defamed her by falsely accusing her of criminal conduct and ordering her to be arrested "in a courtroom full of people." (Doc. 20 at ¶¶ 55-56). She further claims that DA Babin is liable under the doctrine of *respondeat superior*. (*Id.* at ¶ 54). However, Defendants assert that their actions fall within the purview of Article 971 because free speech rights include:

> (a) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law.
>
> (b) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official body authorized by law.
>
> (c) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest.

(Doc. 7-1 at p. 9). Defendants further contend that the alleged arrest, charge, and prosecution of Plaintiff occurred in a public forum and during a judicial proceeding. (*Id.*). The Court disagrees.

Although the Louisiana legislature articulated its intent for Article 971 to be "construed broadly,"[8] Defendants have failed to make a prima facie showing that Article 971 covers ADA O'Bannon's oral statements. Specifically, Defendants'

---

[8] *Thomas,* 833 So.2d at 1286 (quoting 1999 La. Acts 734).

motion fails to articulate how any such statements were made in furtherance of ADA O'Bannon's rights of petition or free speech. Further, Defendants' role in the bond hearing was that of a prosecutor, that is, as representative of the Ascension Parish District Attorney's Office. As a general rule, "[t]he First Amendment protects the press from governmental interference; it confers no analogous protection on the Government." *Columbia Broad. Sys., Inc. v. Democratic Nat. Comm.*, 412 U.S. 94, 139 (1973) (Stewart, J., concurring). Thus, with ADA O'Bannon ostensibly speaking in her capacity as a prosecutor in pursuing charges against Plaintiff for filing a false police report, the Court finds that ADA O'Bannon's statements were not made in connection with a public issue in furtherance of ADA O'Bannon's First Amendment rights merely because they were made during or after a bond hearing in open court. Further, without the underlying fault of ADA O'Bannon, DA Babin cannot be held liable under a theory of *respondeat superior*. *See* La. C.C.P. art. 2320.

Accordingly, Defendants have failed to meet their burden; thus, their Motion to Strike Pursuant to Louisiana Code of Civil Procedure Article 971 is denied. Nevertheless, the Court finds that Defendants are entitled to absolute immunity with regards to Plaintiff's claim of defamation for the reasons previously discussed. *See supra* Part II.D; *Knapper*, 681 So.2d at 946-47.

The Court is compelled to note that if true, the prosecutor's conduct is deeply troubling and perhaps even indicative of a larger problem involving how to address the difficult and often complex issues inherent to domestic abuse cases. However,

17

under the law as articulated by the Supreme Court, Fifth Circuit, and the Louisiana Supreme Court, Plaintiff's claims fail as a matter of law.

IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' **Motions to Dismiss (Docs. 7, 21)** are GRANTED.

**IT IS FURTHER ORDERED** that Defendants' **Motions to Strike Pursuant to Louisiana Code of Civil Procedure Article 971 (Docs. 7, 21)** are DENIED.

Baton Rouge, Louisiana, this 19th day of May, 2015.

_____
BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA