# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KRISTIN LOUPE**                                                              **CIVIL ACTION**

**VERSUS**
                                                                                              **NO. 14-573-BAJ-RLB**
**ROBIN O'BANNON, ET AL.**

## ORDER

Before the Court is Plaintiff's Motion to Quash. (R. Doc. 46). The motion is opposed. (R. Doc. 48). Oral argument was held on December 12, 2016. (R. Doc. 49).

## I.      Background

Kristin Loupe ("Plaintiff") commenced the instant action on September 11, 2014, against Assistant District Attorney Robin O'Bannon ("O'Bannon") and other defendants, seeking damages for injuries allegedly associated with prosecutorial and law enforcement abuse that led to a deprivation of Plaintiff's constitutionally protected rights. (R. Doc. 1).

Plaintiff's Amended Complaint alleges that Plaintiff was called to testify as a witness on January 24, 2014, at a bond hearing in the Honorable Alvin Turner's courtroom in Ascension Parish. (Doc. 20, "Am. Compl." at ¶ 2). The hearing was held to determine the appropriate bond for David Adams, Jr., Plaintiff's boyfriend, following a report of a domestic dispute. (Am. Compl. at ¶ 2.). While testifying, Plaintiff was unable to recall the details of the domestic event, but acknowledged that Adams hurt her arm during the incident. (Am. Compl. at ¶ 4).

Plaintiff alleges that O'Bannon became angry as a result of Plaintiff's refusal to testify that Adams hit her in the face, and requested that Judge Turner have Plaintiff arrested. (Am. Compl., ¶¶ 5-6).[1] Plaintiff asserts that Judge Turner refused O'Bannon's request. (Am. Compl.,

---

[1] As set forth below, O'Bannon disputes that these events occurred as alleged.

¶ 6).  Thereafter, Sheriff's Deputy Blake Prejean was called to testify, and stated under oath that Plaintiff did not report that she was hit in the face. (Am. Compl., ¶ 7).  Plaintiff alleges that O'Bannon then ordered Plaintiff to be arrested for filing a false police report despite "a complete lack of evidence and any proable cause that the Plaintiff had committed a crime." (Am. Compl., ¶ 8).  Plaintiff asserts that O'Bannon acted with deliberate malice to exact revenge when she could not elicit favorable testimony. (Am. Compl., ¶ 8).

The Ascension Parish District Attorney's Office prosecuted Plaintiff for criminal mischief and filing a false police report. (Am. Compl., ¶¶ 17-20).  Ultimately, Plaintiff was found not guilty of the charges. (Am. Compl., ¶ 21).

On November 4, 2016, O'Bannon's counsel issued subpoenas to the Livingston Parish Detention Center and the Ascension Parish Jail for all incoming and outgoing phone call recordings, and any transcription of those recorded calls, made by or made to David Adams . . . from October 18, 2013 and the present. (R. Doc. 46-3; R. Doc. 46-4).

On November 18, 2016, O'Bannon's counsel issued a subpoena to the Livingston Parish Detention Center for all phone call recordings, and any transcription of those recorded calls, made by David Adams to any of seven listed phone numbers between October 18, 2013 and February 21, 2014. (R. Doc. 46-5).  Plaintiff represents that the seven listed telephone numbers belong to Plaintiff and David Adam's father, mother, grandfather, and grandmother. (R. Doc. 46-1 at 3).

Plaintiff filed her motion on October 23, 2016, seeking an order quashing the foregoing subpoenas. (R. Doc. 46).

II.     **Law and Analysis**

Plaintiff seeks an order quashing the Rule 45 subpoenas issued by O'Bannon.  Because the subpoenas seeks compliance in New Orleans, Louisiana, the U.S. District Court for the Eastern District of Louisiana is the appropriate court to seek relief pursuant to Rule 45.  *See* Fed. R. Civ. P. 45(d)(3).  Accordingly, Plaintiff's motion is denied to the extent it seeks a ruling pursuant to Rule 45.[2]

That said, "any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  Accordingly, the Court will construe the instant motion as seeking a protective order pursuant to Rule 26(c)(1) and will, as the court where the action is pending, consider the motion on its merits.

Rule 26(c)'s "good cause" requirement provides that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Here, Plaintiff argues that the subpoenas "are not reasonably calculated to lead to the discovery of admissible evidence and were issued for an improper purpose." (R. Doc. 46-1 at 1). More specifically, Plaintiff argues that the only information relevant to her claims of arrest without probable cause and retaliation for exercising her First Amendment rights, as well as any related defenses, "is what was said by the witnesses at the hearing, which was transcribed by a court reporter, and the parties' actions at the hearing." (R. Doc. 46-1 at 4).  Plaintiff argues that

---

[2] The Court need not reach O'Bannon's additional arguments regarding Plaintiff's standing pursuant to Rule 45 and other procedural defects with regard to the instant motion as brought pursuant to Rule 45.

3

any "after-acquired evidence to establish probable cause or justify [O'Bannon's] actions at the hearing" will be inadmissible because probable cause is determined at the time of arrest. (R. Doc. 46-1 at 4). Plaintiff further argues that O'Bannon has issued the subpoenas for the improper purpose of obtaining information to execute a personal vendetta against Plaintiff. (R. Doc. 46-1 at 5).

O'Bannon opposes the issuance of a protective order on the basis that many of the sought telephone calls and recordings constitute public records and David Adams had no expectation of privacy while in prison. O'Bannon also notes that copies of calls involving David Adams while incarcerated from October 18, 2013 through December 8, 2015 were entered into the public record as exhibits. (R. Doc. 48-2 at 5). These calls are already in O'Bannon's possession.

O'Bannon also denies that she requested Judge Turner to order the arrest of Plaintiff or otherwise ordered the arrest of Plaintiff, claiming that the arresting officer made his own probable cause determination. (R. Doc. 48 at 3). Based on the foregoing, O'Bannon argues that the information sought is relevant to the identification of other witnesses, as well as Plaintiff's credibility and motive. (R. Doc. 48 at 8-9). Excerpts from the phone records in O'Bannon's possession indicate that the additional phone records may contain information relevant to these issues. (R. Doc. 48 at 9-10). In particular, at oral argument, the parties acknowledged that Plaintiff would be a witness in this matter. The calls involving Plaintiff reveal a bias directed toward O'Bannon that is appropriate to explore through discovery and likely cross examination at trial. Other calls involving third parties reflect personal knowledge about the events in question and the credibility and/or veracity of Plaintiff's version of events.

At oral argument, O'Bannon's counsel agreed to provide to plaintiff's counsel all telephone recordings and transcripts in his possession, custody, or control, that fall within the

scope of the subpoenas at issue on or before December 16, 2016. (R. Doc. 49).  In addition, O'Bannon's counsel agreed to withdraw the November 4, 2016 subpoena to the Livingston Parish Detention Center (R. Doc. 46-3) in light of the subsequent November 18, 2016 subpoena to the Livingston Parish Detention Center (R. Doc. 46-5).  Finally, O'Bannon's counsel agreed to limit the scope of the November 4, 2016 subpoena to the Ascension Parish Jail (R. Doc. 46-4) to the seven listed phone numbers found in the subsequent November 18, 2016 subpoena to the Livingston Parish Detention Center (R. Doc. 46-5).  O'Bannon's counsel noted, however, that he was uncertain whether the Ascension Parish Jail had the technological capacity to separate recordings and transcripts of phone calls by telephone number.

Having considered the record and the arguments of the parties, as well as the foregoing limitations to the subpoenas agreed to by O'Bannon's counsel, the Court concludes that Plaintiff has not demonstrated good cause for the issuance of a protective order that would result in effectively quashing the Rule 45 subpoenas.  The subpoenas seek information within the scope of discovery.[3]  Plaintiff has not provided particular and specific demonstrations of fact indicating that an order precluding compliance with the Rule 45 subpoenas is required to protect her from annoyance, embarrassment, oppression, or undue burden or expense.

Nevertheless, as discussed at oral argument, the Court finds it prudent to provide counsel the opportunity to review any telephone recordings and transcripts produced in response to the

---

[3] "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

subpoenas for sensitive and/or confidential information prior to providing such information to their clients.

### III.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion (R. Doc. 46) is **DENIED**.

**IT IS FURTHER ORDERED** that O'Bannon's counsel shall provide a copy of this Order, as well as both subpoenas that remain at issue (R. Doc. 46-5; R. Doc. 46-4), to Livingston Parish Detention Center and Ascension Parish Jail.

**IT IS FURTHER ORDERED** that Livingston Parish Detention Center shall provide responses to the subpoena issued on November 18, 2016 (R. Doc. 46-5) to O'Bannon's counsel on or before **January 6, 2017**, unless otherwise agreed upon by the parties.

**IT IS FURTHER ORDERED** that Ascension Parish Jail shall provide responses to the subpoena issued on November 4, 2016 (R. Doc. 46-4) to O'Bannon's counsel on or before **January 6, 2017**, unless otherwise agreed upon by the parties.  If technologically feasible without imposing an undue burden on Ascension Parish Jail, it shall only produce telephone recordings and transcriptions limited to the telephone numbers listed in the attachment to the November 18, 2016 subpoena to Livingston Parish Detention Center. (R. Doc. 46-5 at 4).

**IT IS FURTHER ORDERED** that on **January 10, 2017**, O'Bannon's counsel shall file a status report into the record indicating what documents have been provided and/or indicate when the parties have agreed on production to take place.

**IT IS FURTHER ORDERED** O'Bannon's counsel shall provide copies of any and all responses to the subpoenas to Plaintiff's counsel within **3 business days** of his receipt of such documents.

**IT IS FURTHER ORDERED** that for a period of **14 days** after Plaintiff's counsel's receipt of such documents, these materials are designated attorney's eyes/ears only.  On or before the conclusion of that time period, counsel are directed to confer regarding the nature of the content of these communications, whether any protective order should be issued regarding those conversations (particularly those involving only non-parties or those that the parties agree are beyond the scope of relevant or admissible evidence).  During this 14 day period, neither counsel shall provide or otherwise disclose the content of the phone recordings and/or transcripts to their clients or any other individual outside of their respective law firms.  Should there be any dispute about the use of this information that requires court resolution, these foregoing limitations shall continue pending such resolution.

Signed in Baton Rouge, Louisiana, on December 19, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**