UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KRISTIN LOUPE

CIVIL ACTION

VERSUS

ROBIN O'BANNON, ET AL.

NO.: 14-00573-BAJ-RLB

## RULING AND ORDER

Before the Court are the **Motions for Summary Judgment** filed by Defendants Assistant District Attorney Robin O'Bannon, Sheriff of Ascension Parish Jeffrey Wiley, Ascension Parish Sheriff's Deputy James Wolfe and Jennifer Kernan. (Docs. 54, 68). Also before the Court is the **Motion to Strike** filed by Plaintiff Kristin Loupe. (Doc. 58). The parties filed oppositions. (Docs. 61, 62, 81). For the following reasons, the **Motion for Summary Judgment (Doc. 54)** is **GRANTED**, the **Motion for Summary Judgment (Doc. 68)** is **GRANTED IN PART** and **DENIED IN PART**, and the **Motion to Strike (Doc. 58)** is **DENIED**.

## I.   BACKGROUND

The undisputed facts taken in the light most favorable to Plaintiff are as follows. On the morning of June 15, 2012, Plaintiff called 911 and told the dispatcher that "the other night" her boyfriend had put her in a headlock, punched her in the head, and grabbed her arm "really hard." (Doc. 54-6 at p. 6). Plaintiff also reported bruises on her leg, ear, and arm. *Id.* at p. 7. Deputy James Wolfe was dispatched to respond, and when he arrived Plaintiff told him that she had been in several physical

altercations with her boyfriend, David Adams. (Doc. 68-6 at p. 1). Plaintiff showed Deputy Wolfe a bruise on her right forearm that she said she sustained trying to keep her boyfriend "off of her" three days before. *Id.* Plaintiff said that she did not want to file charges, but she did want to file a restraining order. *Id.*

Plaintiff also provided a signed written statement, stating that Adams had been violent toward her and that he had recently hit her in the head leaving bruises. *Id.* at p. 2. Deputy Wolfe then spoke to Adams, Plaintiff's boyfriend, who confirmed that he and Plaintiff had been in a physical altercation. *Id.* at p. 1. Deputy Wolfe testified in his deposition that he believed that Plaintiff told him the truth about what happened. (Doc. 68-4 at 14:9-15).

About a week later, on June 23, 2012, Plaintiff called 911 again and told the dispatcher that she wanted to press charges against her boyfriend for hitting her based on the same incident she had previously reported to Deputy Wolfe. (Doc. 54-8 at p. 4-7). Deputy Blake Prejean was dispatched to respond, and when he interviewed Plaintiff she told him that her boyfriend "had beaten her up" on June 15, 2012. (Doc. 54-9). Deputy Prejean observed swelling on Plaintiff's face, and a bruise on her left eye and right forearm. *Id.* The next day, Deputy Prejean obtained a warrant to arrest Adams for domestic abuse battery. (Doc. 68-9 at p. 1). About five months later, on November 19, 2012, Plaintiff requested that the charges against Adams be dropped. (Doc. 68-10). Plaintiff recanted her allegations and claimed that Adams had not hit her. *Id.*

2

On October 17, 2013, Adams was arrested on an unrelated second degree murder charge. (Doc. 68-5 at 71:24-72:10). Three months later, on January 24, 2014, a bail hearing was conducted in the 23rd Judicial District Court in Louisiana to determine whether Adams was a danger to the community or a flight risk. (Doc. 68-12 at 4). At the hearing, Adams' defense attorney called Plaintiff to testify. *Id.* at 98:18-19. Plaintiff testified on direct examination about the June 15, 2012 incident with Adams when she called 911. *Id.* at 102. She testified that she had a "strictly verbal" disagreement with Adams, *id.* at 102:15-22, and that Adams did not hit her on the arm or in the eyes. *Id.* at 103:8-10.

Assistant District Attorney O'Bannon then asked to approach the bench, and an off the record bench conference ensued. *Id.* at 104:24. According to an affidavit submitted by Judge Turner and Adams' attorney, O'Bannon informed Judge Turner that she believed Plaintiff was committing perjury. (Doc. 54-11 and 54-12). Judge Turner then permitted Adams' defense attorney to speak with Plaintiff about her obligation to testify truthfully. *Id.*

On cross-examination, Plaintiff admitted that she and Adams had "an argument that went too far" and that she characterized as a "mutual disagreement." (Doc. 68-12 at 109:22, 112:25). She admitted that Adams grabbed her arm, *id.* at 109:28, but she repeatedly denied that Adams hit or touched her in the face. *Id.* at 109:29-110:2, 110:19-30, 111:21-112:4. Plaintiff ultimately admitted in a deposition that her testimony at the hearing was not true, and that Adams did hit her. (Doc. 54-10 at 119 at 13-20).

3

Coincidentally, Deputy Wolfe, the same officer who first interviewed Plaintiff after she called 911, was working courtroom security that day. (Doc. 81-1 at ¶ 36). After Plaintiff testified, O'Bannon left the courtroom and went into the hall, and returned a short time later. (Doc. 66-7). After she returned, two deputies came into the courtroom, spoke to Plaintiff, and then escorted her into the hall, where they arrested her. *Id.* Deputy Wolfe arrested Plaintiff for making a false report in violation of La. R.S. 14:59. (Doc. 68-13). A few hours after he arrested Plaintiff, Deputy Wolfe wrote that while he "was conducting security in Judge Turner's Court, Kristin Loupe was said to have falsified a police report to testimony [sic]." *Id.* In a second report, likely completed that same day, Deputy Wolfe wrote that "I was informed by Ricky Babin's Office, District Attorney, that Kristin M. Loupe testified under oath where she gave a false police report[.]" (Doc. 81-2 at 26:10-27:15, p. 31). In his deposition testimony, Deputy Wolfe testified that he arrested Plaintiff because he heard O'Bannon say that Plaintiff was lying during the hearing. (Doc. 68-4 at 9:9-10:8). He testified that he thought this meant that O'Bannon was under the impression that Plaintiff lied in her June 2012 police report. *Id.* at 25:6-9.

After being arrested, Plaintiff was booked into a jail in Donaldsonville, Louisiana. (Doc. 81-10 at ¶ 2). It was extremely cold that day with temperatures plunging to 27° F. (Doc. 81-8). Deputy Kernan booked Plaintiff and placed her in a shower cell, she forced Plaintiff to remove her clothes and she conducted a strip search. (Doc. 81-10 at ¶ 4-5.) The Deputy left Plaintiff alone in the shower without clothes and shoes for about one hour. *Id.* at ¶ 6. Puddles of water had formed on the

4

floor, and no mechanical heat was provided in the area. *Id.* at ¶ 7. Plaintiff repeatedly pressed the call button for help because she was freezing and needed to use the restroom. *Id.* at ¶ 8. After Plaintiff was released from jail, she was treated for the beginning stages of frost bite at a clinic. *Id.* at ¶ 9. The Ascension Sheriff's Department has admitted that it has no policies or procedures for the treatment of prisoners during extreme temperatures. (Doc. 78-15 at p. 2). On June 25, 2014, at a bench trial before Judge Marilyn Lambert in the 23rd Judicial District Court, Plaintiff was found not guilty of making a false police report. (Doc. 54-15).

Plaintiff claims that: (1) O'Bannon, in her personal capacity, District Attorney Babin, in his personal and official capacity, and Deputy Wolfe, in his personal capacity are liable under § 1983 for violating Plaintiff's First and Fourth Amendment rights; (2) that Sheriff Wiley, in his official capacity, and Deputy Kernan, in her personal capacity, are liable under § 1983 for violating her Eighth Amendment rights; (3) Deputy Kernan and Sheriff Wiley are liable for negligence; (4) O'Bannon and Babin are liable for defamation; (5) O'Bannon, Babin, Sheriff Wiley, and Deputy Wolfe are liable for false imprisonment; (6) O'Bannon, Babin, Deputy Wolfe, Deputy Kernan, and Sheriff Wiley are liable for intentional infliction of emotional distress and negligent infliction of emotional distress; and (7) O'Bannon and Babin are liable for malicious prosecution. (Doc. 20 at ¶ 22-90).

Plaintiff filed suit on September 11, 2014. (Doc. 1). She filed an Amended Complaint on March 13, 2015. (Doc. 20). The Court then dismissed all of Plaintiff's

claims against Babin and O'Bannon. (Doc. 25).[1] Plaintiff appealed the dismissal of her claims against O'Bannon, and the United States Court of Appeals for the Fifth Circuit reversed the Court in part, holding that "O'Bannon is absolutely immune from suit for money damages based on her alleged malicious prosecution of Loupe." *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016). However, the Fifth Circuit held that "O'Bannon is not absolutely immune from Loupe's federal and state actions based on O'Bannon's alleged order of Loupe's warrantless arrest, as that conduct was not part of O'Bannon's prosecutorial function." *Id.*

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994)). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*,

---

[1] Because the Court has already dismissed all of Plaintiff's claims against Babin, it will not address any of those claims in this Ruling.

939 F.2d 1257, 1263 (5th Cir. 1991). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263. On the other hand, the non-movant's burden is not satisfied merely upon a showing of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## III.  DISCUSSION

Before addressing the motion for summary judgment, the Court must determine the universe of evidence before it.  Plaintiff moves to strike the affidavits of Judge Marilyn Lambert and Morgan Gravois under Rule 12(f) because they are immaterial, impertinent, and scandalous.  (Doc. 58-1 at p. 1).  Gravois was the Assistant District Attorney who prosecuted Plaintiff for making a false police report, and Judge Lambert presided over the bench trial.  (Doc. 54-15).  Plaintiff contends that the affidavits were filed solely to attack the character of Plaintiff's counsel. *Id.* Among other things, Gravois' affidavit states that Plaintiff's counsel completely misrepresented the facts to Judge Lambert by presenting only portions of the hearing transcript to the court.  (Doc. 58-1 at p. 3).

Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  An affidavit, however, is not a pleading, and therefore Rule 12(f) does not apply here. *See* Fed. R. Civ. P. 7(f). Apparently recognizing this problem, Plaintiff asks the Court to construe

7

her motion to strike under Rule 12(f) as a motion to strike under Rule 56(h) in her reply memorandum. (Doc. 65).

Rule 56(h) provides that when an affidavit is filed in connection with summary judgment and "is submitted in bad faith or solely for delay" the court "may order the submitting party to pay the other party the reasonable expenses, including attorney's fees[.]" Plaintiff, however, asked the Court to construe her motion to strike under Rule 12(f) as a motion to strike under Rule 56(h) for the first time in her reply memorandum. Courts should not consider arguments raised for the first time in reply memorandums. *See Gillaspy v. Dallas Independent School Dist.*, 278 Fed. Appx. 307, 315 (5th Cir. 2008). Plaintiff's motion to strike is thus denied.

## A.   Plaintiff's § 1983 Individual Capacity Claims

In a claim brought against a defendant in their individual capacity qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A plaintiff overcomes immunity if he can show: "(1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008). The Fifth Circuit has held that even when construing all facts and drawing all reasonable inferences in a light most favorable to the non-moving party, qualified immunity immunizes "all but the plainly

8

incompetent or those who knowingly violate the law." *Poole v. City of Shreveport*, 691

F.3d 624, 627 (5th Cir. 2012).

### 1. *Plaintiff's Fourth Amendment Claims against O'Bannon and Deputy Wolfe*

Plaintiff claims that Deputy Wolfe is liable under § 1983 for violating her

Fourth Amendment rights because he lacked probable cause to arrest Plaintiff for

making a false police report. (Doc. 20 at ¶ 31-39). "The right to be free from arrest

without probable cause is a clearly established constitutional right." *Mangieri v.*

*Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). "[T]he test for whether the 'police officer

had probable cause to arrest is if, at the time of the arrest, he had knowledge that

would warrant a prudent person's belief that the person arrested had already

committed or was committing a crime.'" *Id.* (quoting *Duckett v. City of Cedar Park*,

950 F.2d 272, 278 (5th Cir. 1992)). Courts are not limited to reviewing the basis for

probable cause alleged when the arrest occurred. Probable cause for an arrest exists

"if the officer was aware of facts justifying a reasonable belief that an offense was

being committed, whether or not the officer charged the arrestee with that specific

offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citing

*Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004)).

Deputy Wolfe argues that he had probable cause to arrest Plaintiff for filing a

false report and for committing perjury. (Doc. 76 at p. 15). The Court need not

determine whether Deputy Wolfe had probable cause to arrest Plaintiff for filing a

false report because he plainly had probable cause to arrest Plaintiff for perjury.

Under Louisiana law, perjury is: (1) the intentional making of a false written or oral

statement; (2) in or for use in a judicial proceeding; (3) when the false statement is made under oath; (4) and relates to a matter material to the issue or question in controversy; (5) with knowledge that that statement is false. La. R.S. § 14:123.

Deputy Wolfe had probable cause to arrest Plaintiff for perjury because Plaintiff stated under oath on direct examination that she and Adams had a "strictly verbal disagreement." (Doc. 68-12 at 102:15-22). When to the contrary, Plaintiff told Deputy Wolfe that Adams had hit her in the head, Deputy Wolfe confirmed with Adams that he and Plaintiff had a physical altercation, and he personally observed bruises on Plaintiff's arms. (Doc. 68-6 at p. 1-2). Plaintiff argues that she did not perjure herself because she testified that she did not recall what she put in the police report, and once the report was presented to her she testified that Adams grabbed her arm and injured her. (Doc. 81 at p. 13). However, even after O'Bannon presented the report to her, Plaintiff continued to deny that Adams had hit her in the face, (Doc. 68-12 at p. 110 at 37:30), when in fact, Plaintiff told Deputy Wolfe that Adams had hit her in the head (Doc. 68-6 at p. 2). In her deposition testimony, Plaintiff even admitted that her testimony at the hearing was not true, and that Adams did hit her. (Doc. 54-10 at 119 at 13-20). Based on these false statements, Deputy Wolfe had probable cause to arrest Plaintiff for perjury.

Plaintiff also claims that O'Bannon is liable under § 1983 for violating her Fourth Amendment rights because she instructed Deputy Wolfe to arrest Plaintiff. Even if O'Bannon instructed Deputy Wolfe to arrest Plaintiff, there was probable

cause to believe Plaintiff had perjured herself, and therefore Plaintiff's Fourth Amendment claim against O'Bannon is dismissed.

### 2. Plaintiff's First Amendment Claim Against O'Bannon and Deputy Wolf

Plaintiff claims that O'Bannon and Wolfe are liable under § 1983 for violating her First Amendment rights because O'Bannon and Deputy Wolfe arrested Plaintiff for retaliatory reasons. (Doc. 20 at ¶ 22-30). The Supreme Court, however, "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause[.]" *Reichle v. Howards*, 566 U.S. 658, 665 (2012). As the Court has already explained, Plaintiff's arrest was supported by probable cause. Even if Plaintiff could show that she was arrested for retaliatory reasons, the fact that there was probable cause for her arrest, precludes her First Amendment claim.

### 3. Plaintiff's Eighth Amendment Claim Against Deputy Kernan

Plaintiff claims that Deputy Kernan violated her Eighth Amendment rights because she left Plaintiff naked in a cold cell, without shoes for an hour, causing her to experience the beginning stages of frostbite. (Doc. 81-10). A pretrial detainee's claim based on unconstitutional conditions of confinement is analyzed under the Fourteenth Amendment's Due Process Clause and not the Eighth Amendment's prohibition on cruel and unusual punishment, which applies only to convicted inmates. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). The Court will therefore construe Plaintiff's Eighth Amendment claim as a Due Process claim.

*See Mills v. City of Bogalusa*, No. 12-CV-1078, 2013 WL 6184984, at *3 (E.D. La. Nov. 25, 2013) (construing Eighth Amendment claim as a Due Process claim).

The standard to determine if a pretrial detainee's due process rights have been violated "depends on whether the detainee challenges the constitutionality of a condition of his confinement or whether he challenges an episodic act or omission of an individual state official." *Estate of Henson v. Wichita Cty.*,795 F.3d 456, 462 (5th Cir. 2015). Plaintiff relies on an episodic act or omission theory, which has two requirements, because she contends that Deputy Kernan failed to act appropriately on a single occasion. First, a plaintiff must establish that the jail official breached a duty to tend to basic human needs. *Id.* Second, a plaintiff must show that the jail official had the requisite state of mind, which is "subjective knowledge of a substantial risk of serious harm" to the detainee and deliberate indifference. *Id.* (*citing Hare*, 74 F.3d at 646, 650).

Regarding the first requirement that a plaintiff must establish a breach of basic human needs, the state owes the same duty to pretrial detainees as it owes to convicted inmates under the Due Process Clause as the Eighth Amendment. *Hare*, 74 F.3d at 650. A prison official has a duty to provide prisoners "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). Exposing inmates to "extreme cell temperatures" may violate the Eighth Amendment. *Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015). Indeed, the Supreme Court suggested that "a low cell temperature at night combined with a failure to issue blankets" may violate the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). In *Boulds v.*

*Miles*, 221 F. App'x 322, 323 (5th Cir. 2007), the Fifth Circuit held that an inmate stated a claim for an Eighth Amendment violation by alleging that he was subjected to freezing temperatures in his cell because the prison heating system was not working and prison officials failed to provide extra blankets or heaters. *Id.*

The facts taken in the light most favorable to Plaintiff establish that on a very cold, wet, and icy night in January, Deputy Kernan left Plaintiff naked in a cold shower cell, without shoes for about one hour. (Doc. 81-10). The evidence also indicates that there were puddles of water on the cell floor and water dripping from the ceiling, and Plaintiff repeatedly pressed the call button for help because she was in a state of severe discomfort. *Id.* After Plaintiff was released from jail, she went to a clinic, where she was diagnosed with "possible frostnip." *Id.* at p. 4. Based on Fifth Circuit precedent establishing that exposing inmates to extreme temperatures violates the Eighth Amendment, and the Supreme Court's suggestion that low cell temperatures may violate the Eighth Amendment, the Court concludes that there is a material dispute of fact about whether Plaintiff was deprived of her basic right to be housed in an adequately warm cell.

Deputy Kernan argues that there is no evidence that Plaintiff suffered any injury because surveillance footage shows Plaintiff emerging from the shower cell, and Plaintiff does not appear to be in distress or complaining about any physical discomfort. (Doc. 76 at p. 7). However, the video footage lacks any audio, and although Plaintiff does not appear to be in any pain in the video, the video does not definitively prove that Plaintiff was not in a cold cell, naked, for about an hour

because the video does not show what happened inside the shower cell. Although a jury might conclude that the video raises doubts about Plaintiff's claim, at this stage of the proceeding, where all reasonable inferences must be drawn in favor of the Plaintiff, the Court concludes that there is a material dispute of fact about whether Plaintiff was exposed to extremely cold temperatures in a cell.

Regarding the second element of her due process claim, a plaintiff must show that a jail official had "subjective knowledge of a substantial risk of serious harm" to the detainee and responded to that risk with deliberate indifference. *Estate of Henson*, 795 F.3d at 462. Deliberate indifference is a high standard, and it cannot be inferred from a negligent or even a grossly negligent response to a substantial risk of serious harm. *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). To establish deliberate indifference, an inmate must submit evidence that prison officials intentionally mistreated an inmate, ignored complaints, or engaged in similar conduct that evinces a wanton disregard for an inmate's health or safety. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)

Here, the evidence in the light most favorable to Plaintiff reflects that Deputy Kernan ignored Plaintiff's requests for help because Plaintiff repeatedly pressed the call button for help because she was in a state of severe discomfort attributable to the cold temperature of her cell. (Doc. 81-10). If true, this suggests that Deputy Kernan ignored Plaintiff's complaints and therefore acted deliberately indifferent to her health and safety. There is therefore a material dispute of fact about whether Deputy Kernan is liable for violating Plaintiff's due process rights.

B.    **Plaintiff's § 1983 Official Capacity Claim Against Sheriff Wiley**

Plaintiff claims that Sheriff Wiley is liable in his official capacity for failing to implement a jail policy for extreme temperature conditions. (Doc. 81 at p. 19). Sheriff Wiley admitted that there are no written policies or procedures governing the treatment of prisoners in extreme temperatures by the Ascension Parish Sheriff's Office. (Doc. 81-12 at p. 2). He also admitted that there were no written policies with special instructions for handling prisoners and the cold weather on the specific date Plaintiff was arrested. *Id.* at p. 1.

Official capacity claims against a municipal policymaker, like a Sheriff, based on the absence of an official policy requires proof that the lack of a policy caused: (1) a constitutional violation and; (2) that it was the result of deliberate indifference. *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992). As the Court previously explained, there is a material dispute of fact about whether leaving Plaintiff in a cold, wet cell, on a freezing day in January, naked and without shoes, constitutes a violation of Plaintiff's due process rights.

Deliberate indifference requires "that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, —— U.S. ——, 131 S.Ct. 1350, 1360 (2011). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program

15

that will cause violations of constitutional rights." *Id.* (internal quotation marks omitted).

But even construing the evidence in the light most favorable to Plaintiff, there is no evidence that Sheriff Wiley was deliberately indifferent because there is no evidence of a pattern of similar constitutional violations. In fact, there is no evidence whatsoever that any other pretrial detainee has experienced any injuries as a result of cold temperatures in an Ascension Parish jail, which might have put Sheriff Wiley on notice that failing to have an extreme temperature policy could lead to constitutional violations.

A plaintiff can also establish deliberate indifference when "it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne,* 973 F.2d at 392. This is a narrow exception to the general rule that there must be a pattern of constitutional violations. *Connick,* 131 S.Ct at 63. For example, the Supreme Court has indicated that if a city armed its police with firearms and sent the officers to capture fleeing felons without any training on the use of deadly force, and the officers violate citizens' rights, the decision not to train officers would amount to deliberate indifference. *Id.* at 63-64.

Likewise here, it is obvious that the likely consequence of not adopting a policy governing cold temperatures is that detainees held in jail will be exposed to extremely cold temperatures. Indeed, it is commonsense that if it is cold outside—here as cold as 27° F—it will become cold inside a building. It is also obvious that when it is cold enough inside, detainees may suffer from temperature-related injuries like frostnip

or frostbite. Accordingly, the Court denies Sheriff Wiley's Motion for Summary Judgment on Plaintiff's official capacity claim.

### C.    Plaintiff's State Law Claims

#### 1.    Negligence

Plaintiff argues that Deputy Kernan and Sheriff Wiley are liable for negligence because they failed to protect Plaintiff from cold temperatures in the jail. (Doc. 81 at p. 21-22). The Court has already concluded that there is a material dispute of fact about whether Plaintiff was deliberately indifferent to Plaintiff by leaving her naked in an extremely cold cell for an hour. It follows that there is a material dispute of fact about whether Deputy Kernan was negligent. Under Louisiana law, Sheriff Wiley is vicariously liable for the actions of his subordinates, which includes Deputy Kernan. *See* La. Civ. Code art. 2320. Thus, Deputy Kernan and Sheriff Wiley's Motion for Summary Judgment on Plaintiff's negligence claim is denied.

#### 2.    Defamation

Plaintiff alleges that O'Bannon defamed her when she falsely accused her of criminal conduct. (Doc. 20 at ¶ 53-60). Louisiana law identifies five elements to establish a claim for defamation: "(1) defamatory statement concerning another; (2) falsity of the statement; (3) an unprivileged publication to a third party; (4) fault (negligence or greater) on the part of the publisher; and (5) resulting injury." *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004). If any of the required elements of defamation is lacking, the cause of action fails. Here, even taking the facts in the light most favorable to Plaintiff, there is no evidence that O'Bannon made a false statement. As

the Court previously explained, there was probable cause to suggest that Plaintiff had perjured herself. Plaintiff thus cannot prove a required element of a defamation claim. Therefore, Plaintiff's defamation claim is dismissed.

### 3. False Imprisonment

Plaintiff claims that O'Bannon, Sheriff Wiley and Deputy Wolfe are liable for false imprisonment. (Doc. 20 at ¶ 61-68). The Louisiana tort of false imprisonment consists of two elements: (1) detention of the person; and (2) the unlawfulness of the detention. *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 690 (La. 2006). If an officer has probable cause for an arrest, they are not liable for false imprisonment. *McMasters v. Dep't of Police*, 172 So. 3d 105, 116 (La. Ct. App. 2015). As the Court has already noted, there was probable cause to arrest Plaintiff, and therefore Plaintiff's false imprisonment claim is dismissed.

### 4. Intentional Infliction of Emotional Distress

Plaintiff claims that O'Bannon, Deputy Wolfe, Deputy Kernan, and Sheriff Wiley are liable for intentional infliction of emotional distress ("IIED") because O'Bannon ordered Plaintiff's arrest without probable cause, Deputy Wolfe arrested Plaintiff without probable cause, and Deputy Kernan and Sheriff Wiley allowed Plaintiff to be exposed to extreme cold in jail. (Doc. 81 at p. 21-22). The elements of intentional infliction of emotional distress, include: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially

certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).

Extreme and outrageous conduct includes conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Neither O'Bannon nor Deputy Kernan engaged in extreme and outrageous conduct because, as the Court has already explained, there was probable cause to arrest Plaintiff for perjury. Plaintiff's IIED claim against them is dismissed. There is, however, a material dispute of fact about whether Deputy Kernan engaged in extreme and outrageous conduct because, if true, it is unacceptable to leave a person naked in a cold cell, for an hour while the person in distress repeatedly presses a call button for help. The Court also finds that a jury may find that it is unacceptable for a Sheriff to not have a policy in place governing extreme temperatures in jail. Indeed, heat is a basic human necessity and taking all facts in the light most favorable to Plaintiff, Sheriff Wiley had no policy in place to deal with temperatures plunging to as low as 27° F.

Emotional distress is severe when "the mental suffering or anguish is extreme" *id.* at 1210, and the distress suffered must be such that no reasonable person could be expected to endure it." *Id.* Here, the facts taken in the light most favorable to Plaintiff reflect that she allegedly has nightmares about being locked in the shower cell, (Doc. 81-5 at p. 259), she is afraid to testify in court again, *id.* at p. 272-73, she is afraid of O'Bannon, *id.* at p. 274, and she suffers from depression, anxiety, and

post-traumatic stress disorder, *id.* at p. 288. Considering these facts, there is certainly a material dispute of fact about whether Plaintiff has suffered severe emotional distress.

Finally, a plaintiff must establish that a defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White*, 585 So.2d at 1209. Here, taking the facts in the light most favorable to the Plaintiff, there is a material dispute of fact about whether it was substantially certain that Plaintiff would suffer severe emotional distress from being left naked in a cold shower cell, in pools of water, for an hour. It takes nothing more than commonsense to imagine how traumatic this experience would be. The Court therefore grants Defendants Motion for Summary Judgment on Plaintiff's IIED claim as to O'Bannon and Deputy Wolfe and denies the Motion for Summary Judgment as to Deputy Kernan and Sheriff Wiley.

>    5.    *Negligent Infliction of Emotional Distress*

Plaintiff claims that O'Bannon and Wolfe are liable for negligent infliction of emotional distress ("NIED") because they falsely arrested Plaintiff, and that Deputy Kernan and Sheriff Wiley are liable for NIED because they allowed Plaintiff to be exposed to extreme cold temperatures in the jail. (Doc. 81 at p. 20-21). Recovery for negligent infliction of emotional distress has been limited to those cases involving the "especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi v. Department of Wildlife and Fisheries*, 567 So.2d 1081, 1096 (La. 1990). To prove a

claim for negligent infliction of emotional distress, the plaintiffs must establish the following: (1) the defendants owed a duty to the plaintiffs; (2) defendants breached that duty; (3) the defendants' breach of the duty was a cause-in-fact of the plaintiffs' alleged harm; (4) the defendants' breach was a legal cause of the harm plaintiffs' claim to have suffered; and (5) actual damages. *Doe v. Univ. Healthcare Sys., L.L.C.*, 145 So. 3d 557, 573 n.21 (La. Ct. App. 2014).

Neither O'Bannon nor Deputy Wolfe were negligent in arresting Plaintiff because there was probable cause to arrest Plaintiff for perjury, as the Court has already explained. Therefore, neither Defendant breached any duty to Plaintiff. There is, however, a material dispute of fact about whether Deputy Kernan and Sheriff Wiley are liable for NIED for the same reasons that there is a material dispute of fact against them on Plaintiff's IIED claim. Indeed, if true, a jury may find that it is negligent to leave someone naked in a cold shower cell for an hour.

> 6. *Malicious Prosecution*

The Fifth Circuit held that O'Bannon is absolutely immune from prosecution for Plaintiff's malicious prosecution claim. *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016). Plaintiff's malicious prosecution claim is therefore dismissed.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Strike (Doc. 58)** is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Doc. 54)** filed by Assistant District Attorney Robin O'Bannon is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Assistant District Attorney Robin O'Bannon are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Doc. 68)** filed by Sheriff Jeffrey Wiley, Deputy Jennifer Kernan, and Deputy James Wolfe is **GRANTED IN PART and DENIED IN PART**.

The Motion for Summary Judgment is **GRANTED** as to Plaintiff's: (1) § 1983 individual capacity claim against Deputy Wolfe under the First and Fourth Amendment; (2) state law false imprisonment claim against Sheriff Wiley and Deputy Wolfe; (3) state law intentional infliction of emotional distress and negligent intentional infliction of emotional distress claim against Deputy Wolfe.

The Motion for Summary Judgment is **DENIED** as to Plaintiff's: (1) § 1983 individual capacity claim against Deputy Kernan and official capacity claim against Sheriff Wiley under the Eighth Amendment, which the Court construes as Due Process claims under the Fourteenth Amendment; (2) state law negligence claim against Deputy Kernan and Sheriff Wiley; (3) state law intentional infliction of emotional distress and negligent intentional infliction of emotional distress claims against Deputy Kernan and Sheriff Wiley.

**IT IS FURTHER ORDERED** that all claims against Deputy Wolfe are DISMISSED WITH PREJUDICE.

Baton Rouge, Louisiana, this 8th day of January, 2018.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA